PER CURIAM.

(No. 5422

HARRY B. WILLIAMS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 15, 1973.*

MASSEY, ANDERSON, GIBSON & PEARMAN, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

BURKS, J.

This is an action by Harry B. Williams to recover $16,051.26, which sum he claims is due him for loss of wages and retirement benefits because of alleged discriminatory practices of the Department of Public Works and Buildings of the State of Illinois while claimant was employed by said department.

Claimant charges that, in his case, respondent unjustly discriminated against him in his employment solely because of his age, a practice which the legislature subsequently declared to be against the public policy of this state (Ch. 48, Sec. 881, Ill.Rev.Stat., 1967, Approved July 26, 1967). We notice, incidentally, that the effective date of this Act was approximately 12 days before claimant's employment was terminated by the respondent on August 7, 1967. We will allude to said statute later in this opinion.

Respondent admits all of the facts presented by the claimant but contends that the facts do not legally justify or support claimant's cause of action. Respondent takes the

position that the policy of its Division of Highways concerning retirement, on which this action is based, was a legal exercise of regulatory power; uniformly applied to all engineers of claimant's age and class; and that claimant could have resigned if he did not choose to acquiesce in said policy and his financial loss resulting therefrom.

The undisputed facts are restated as follows:

The claimant, Harry B. Williams, is and has been since 1930, a registered professional engineer. His Illinois license is No. 62-5310. He was 57 years of age when he was employed by respondent's Division of Highways as a Civil Engineer I in February, 1956. Claimant worked as an engineer in said division until his employment was terminated August 7, 1967, because he was then 68 years of age. His termination because of his age was mandatory under a retirement policy adopted by the Division of Highways in 1963 and revised in 1967. The total period of claimant's employment with the State was 11.48 years.

During the first 8 years of claimant's employment, 1956-1964, he was advanced in position first to Civil Engineer II and then to Civil Engineer III with attendant increases in salary applicable to his classification. It was the treatment claimant received during the last 3½ years of his employment and after his retirement on which he bases this action, i.e., a reduction in salary from a high of $775 to $500 per month; a demotion in job classification without any change in duties or responsibilities; and his forced retirement at age 68 with reduced pension benefits.

At this point certain important facts in the record should be emphasized which indicate that claimant's reduction in salary, his demotions in position title, and his forced retirement at age 68 were all based solely on age and on no other factors.

Claimant had been performing the duties of a Civil Engineer III during all of the last 5 years of his employment although his promotion to that title and salary, on the recommendation of his superiors, did not become effective until July 16, 1963. Claimant was then 64 years old. There was never any question as to claimant's physical or mental ability to perform his duties. He was never reprimanded or disciplined in any way. In each of his Annual Service Rating Reports he was rated "Very Good" by his superiors. To receive such a rating an employee must have a numerical rating of from 3.5 to 4.4 on his report. On his last annual report (1966) claimant received a numerical rating of 4.2. A grade of 4.5 is classified as "Excellent" according to the schedule printed on the report which measures the quality and quantity of an employee's work as well as his qualifications. We were impressed with the rating claimant received on all of his recent reports which were made a part of the record. We think it significant that claimant received the same high rating of 4.5 in each of the following: Dependability, punctuality and physical fitness. These appear to be high marks for an employee of any age.

We turn now to the policy of the Division of Highways on the matter of compulsory retirement which so adversely affected this claimant.

At the time claimant was employed in 1956, he was told by the District Engineer, Mr. Wydlick, that there was no compulsory retirement age for engineers and that he could work until he was 85 if he were able to do the job.

Some seven years later, the Division of Highways promulgated a compulsory retirement policy affecting the engineering staff, phasing out certain employees between the ages of 65-70, including the claimant. The said revised policy, effective July 1, 1963, provided in substance that employees over 65 years of age shall not receive a salary of

more than $600 per month; that employees over 67 years of age shall not receive a salary of more than $500 per month and that employees 70 or more years of age must resign or be released from the Division of Highways.

Despite this revised policy, claimant, who was then 64 years old, was promoted to Civil Engineer III with a salary increase to $775 per month, effective July 16, 1963. This apparently deserved promotion lasted for 5 months. On March 1, 1964, pursuant to the above stated policy, claimant was reclassified as Civil Engineer II and his pay reduced to $600 per month. Then, 26 months later, on May 1, 1966, claimant was reclassified as Civil Engineer I and his pay reduced to $500 per month. His salary remained at $500 per month until his forced retirement some 15 months later on August 7, 1967. During all of this time, claimant continued to perform the same regular and additional duties as he had done under the title of Civil Engineer III. The rate of pay for other Civil Engineer III's who were performing the same duties as claimant, increased from $775 to $950 per month in this same period of time.

There was no change in claimant's duties, hours of work, or vacation time in the period of July 1, 1963, until his termination August 7, 1967, at age 68.

Claimant's compulsory retirement at age 68 rather than age 70 was forced by a further revision in respondent's policy, effective July 1, 1967.

We have carefully examined the documents in the record containing a copy of the regulations of the Division of Highways stating its personnel policy relating to retirement as revised July 1, 1963, and again July 1, 1967. The exact title of said regulations is stated as follows:

Personnel Policy Regarding Transfer or Movement of Employees of the Technical and Engineering Staff from Certain Supervisory and Management and Other Positions Because of Age and/or Reduced Capabilities

The pertinent provision in said regulations, as revised in 1967, which applied to the claimant, stated that "engineering employees over the age of 65 shall receive a salary not to exceed 70% of the salary received at age 65" and that "all employees of the engineering staff shall retire at the end of the first pay period following the date on which they reach the age of 68".

The same regulations contained a provision that certain employees, in higher positions than the claimant, who were required to vacate these positions at age 65, "may be assigned to other duties commensurate with his capabilities at an appropriate classification level and a salary not to exceed 70% of the salary received at age 65". This provision as to the "assignment to other duties" did not apply to the claimant. He was never assigned less duties and responsibilities. He was just paid a lower salary for performing the same duties after he reached the age of 65.

We hold that the aforesaid policy of the Division of Highways, as it was applied to the claimant, unjustly discriminated against him because of age.

It would have been different if claimant had been assigned duties that were less demanding on and after his 65th birthday; or if there had been any evidence that he was then less capable of performing the same duties that he had previously performed and continued to perform until he was terminated. The evidence was all the other way. Claimant continued to receive high praise from his superiors on his service rating reports. His only fault, apparently, was his age.

Just 12 days before claimant's employment was terminated, the legislature emphatically declared that discrimination in employment because of age was against the public policy of this State. We refer to an Act approved July 26, 1967 *(Ch. 48, Sec. 881, et seq., Ill. Rev. Stat., 1967)*

which reads in part as follows:

881. (a) The General Assembly declares that the practice of discriminating in employment against properly qualified persons because of their age is contrary to American principles of liberty and equality of opportunity, deprives the State of the fullest utilization of its capacities for production and endangers the general welfare.

(c) The right to employment otherwise lawful without discrimination because of age, where the reasonable demands of the position do not require such an age distinction, is hereby recognized as and declared to be a right of all of the people of the State which shall be protected as provided herein.

(d) It is hereby declared to be the policy of the State to protect the right recognized and declared in paragraph (c) of this Section and to eliminate all such discrimination to the fullest extent permitted. This Act shall be construed to effectuate such policy.

The above statute explicitly condemns and forbids the kind of discrimination suffered by the claimant as stated in his complaint.

Respondent does not specifically contend that the above statute could have no retroactive application to the retirement policy of the Division of Highways adopted in 1963. Rather, respondent attempts to justify said policy under the following language of the same statute:

883. Nothing in this Act affects the retirement system of any employer where such system is not merely a subterfuge to evade the purpose of this Act; * * * Nor shall anything in this Act be construed as preventing the State or any political subdivision thereof or any other governmental agency from operating any program of compulsory retirement for its employees. (Ch. 48, Sec. 883, Ill.Rev.Stat.)

Respondent asks, "How can said retirement policy possibly be a subterfuge to evade the purpose of the Age Discrimination Act when the retirement policy was instituted several years prior to the enactment of the statute?" We believe the answer is obvious. The retirement policy was not a subterfuge. As applied to the claimant, but not to other employees in higher positions, it openly discriminated against this claimant solely because of his age. Such discrimination is forbidden by Sec. 881(a) cited above, which declares it to be "contrary to American principles of liberty and equality of opportunity."

Parenthetically, we take judicial notice of the fact that the "American principles of liberty" have been in existence a long time. We believe that such language in the Age Discrimination statute indicates the legislative intent that the Act may be applied retroactively. (*See I.L.P. Statutes §193* and *Salmons* vs. *Dutz (1958) 16 Ill.App. 2d 356.*)

No one questions the right of the Division of Highways to operate a program of "compulsory retirement for its employees." That is specifically authorized by the statute in question (Sec. 883 supra). Respondent argues that the purpose of the retirement policy, which we find to be discriminating against the claimant, was "to encourage retirement at age 65 or as soon thereafter as practicable" rather than to make retirement compulsory at age 65. We find no such statement of intent in the said personnel policy issued in 1963 or in 1967. The purpose of both orders are stated in the following words, exactly the same except for effective date:

"In order to insure efficient and progressive management and operation of the Division of Highways in achieving its objectives, on and after July 1, 1963, the following regulations will be applicable to the transfer or movement of employees from the supervisory and management positions listed under Section A and from other positions as indicated."

The regulations then proceed to state that all employees shall vacate the positions they hold on their 65th birthday; that all persons over 65 shall receive a lower salary and lower job classification; and that certain employees (all in higher positions than the claimant) shall be assigned to other duties commensurate with capabilities. There is no provision in the regulations for employees of claimant's age and class to be assigned "other duties". They merely take a lower salary and lower classification, according to the aforesaid published policy.

Whether the departmental regulation was uniformly applied to all employees affected by it, as respondent

contends, is irrelevant to the issue in this cause of action. All of the evidence in this record supports our finding that the said regulation, as it was applied to this particular claimant, discriminated against him solely because of his age. On and after his 65th birthday he continued to perform his same duties with a fine rating for efficiency, but his salary and classification were reduced. At the same time, other employees doing the same work were receiving increases in salary and classification.

The principal thrust of the respondent's argument is that claimant did not have to work for the State of Illinois under these circumstances. Claimant could and perhaps should have quit, according to respondent, rather than perform the same duties as other Civil Engineer III's but at a lower salary than the others received.

The undisputed fact is that the claimant protested his demotion and eventual termination at each step of the way. Despite his protests, the state continued to avail itself of the abilities of the claimant by continuously utilizing his skills and experience in the performance of the same duties he performed as a Civil Engineer III. In effect, the state was unjustly enriched by taking the services performed by the claimant without paying him the same compensation paid others performing the same work.

Why did claimant stay on? He hoped his protests would bear fruit; that he would be reinstated to his Civil Engineer III rate with a corresponding increase in rate of pay, and considered that these chances would be lost if he resigned.

To hold that the claimant loses his right to assert this claim because he did not quit his job and seek other employment at his age, or live on his comparatively meager pension benefits, would violate the spirit and intent of the law which prohibits discrimination in employment because of age.

To the extent that the departmental regulation was inconsistent with the Age Discrimination Act, the Director of the Department of Public Works and Buildings exceeded his power to prescribe such regulation. This is apparent from reading the words which limit the director's statutory authority on this subject in *Ch. 127, Sec. 16, Ill.Rev.Stat.*:

"The director of each department is empowered to prescribe regulations, *not inconsistent with law*, for the government of his department . . . ."

None of the cases previously decided by this court, which were called to our attention, dealt with the legality of a departmental regulation remotely similar to the regulation which we here hold to be illegal as it was applied to the claimant.

It appears that no Illinois cases interpreting the Illinois Age Discrimination Act of 1967 have been reported by the reviewing courts. We were, therefore, impressed with claimant's citation of an interpretation of the Federal Age Discrimination in Employment Act of 1967. Acknowledging that the said federal act is not directly applicable to claimant's situation, claimant correctly points out that it is a statutory enactment of prevailing public policy, not only on the federal level, but also at the state level just as the Illinois Statute, effective July 26, 1967, sets forth the public policy of this state against discrimination in employment on account of age.

Claimant submits the following statement from the "Administrator's Interpretations" of the Federal Act:

"Thus, for example, in a situation where it has been determined that an employer has violated the Act by paying a 62-year-old employee a prohibited wage differential of 50 cents an hour less than he is paying a 30-year-old worker, in order to achieve compliance with the Act, he must raise the wage rate of the older employee to equal that of the younger worker . . . ." (*Section 860.75, Page 401:5076 Fair Employment Practice Manual, Bureau of National Affairs*)

We find that claimant has proved his claim for damages by a preponderance of the evidence.

The amount which claimant demands as being due to him, if he prevails, is not disputed by the respondent. The amount of $16,051.25 is carefully broken down and explained in a Bill of Particulars attached to the complaint and in claimant's Exhibit 14, admitted into evidence at the hearing. Since claimant's calculations as to his damages are not in dispute and are a part of the permanent record in this case, we will not repeat them here.

However, in carefully examining claimant's calculations in the aforesaid Exhibit 14, the court noted that there should have been deducted from the amount of the award a sum equal to the additional amount claimant would have been required to contribute to his pension fund if he had been paid the additional salary to which we find he was legally entitled from March 1, 1964, to August 7, 1967. The court called this matter to the attention of the parties, through the attorney for the respondent. We directed that the parties consult with the Department of Public Works and Buildings as to the rate of employee's contribution to the pension fund during the period in question and advise the court accordingly. By a joint stipulation filed January 29, 1972, it was stipulated that the said "adjustment should be calculated as a 6% reduction of the $11,713.50 shown as salary loss" making the total reduction $702.78.

We therefore deduct the amount of $702.78 from $16,051.25, the amount previously claimed and proved as claimant's damages, leaving $15,348.47 as the net amount due the claimant.

The claimant, Harry B. Williams, is hereby awarded damages in the total sum of $15,348.47.